

# In the Missouri Court of Appeals Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| NATHAN HANNON, | ) | No. ED102443 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Hon. Edward W. Sweeney, Jr. |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 15, 2016 |

## Introduction

A jury convicted Nathan Hannon ("Hannon") on two counts of first-degree statutory sodomy for allegedly molesting Victim. After a direct appeal, Hannon filed a Rule 29.15[1] motion for post-conviction relief. The motion court granted the motion and entered judgment granting Hannon a new trial. The State appeals the motion court's judgment and argues that the motion court clearly erred in granting Hannon's motion for post-conviction relief for three reasons. First, the State argues that Hannon's trial counsel ("Trial Counsel") was not ineffective for failing to object to hearsay testimony at trial. Second, the State argues that Trial Counsel was not ineffective for failing to investigate Victim's school attendance records, which contradicted Victim's testimony. Third, the State argues that the motion court improperly exceeded its scope

---

[1] All rule references are to Mo. R. Crim. P. (2015).

of review under Rule 29.15 by considering issues not raised in Hannon's post-conviction motion. Because the motion court did not clearly err in finding Trial Counsel ineffective for failing to obtain Victim's school attendance records, we affirm the motion court's judgment.

Factual and Procedural History

## I.  Factual Background and Hannon's Original Trial

In February of 2009, Victim disclosed to his grandmother ("Grandmother") that he was molested by Hannon some years before. Grandmother contacted a counselor who was already working with Victim. The counselor contacted the police, and Victim was interviewed by a Children's Advocacy Center ("CAC") employee. During the interview, Victim said he was about five years old when he was molested. Victim then specified that the molestation occurred one day while he was at home sick from school. Victim also remembered the molestation occurred the day before his mother ("Mother") suffered a drug overdose, which was the day Grandmother took custody of Victim and Victim's sister ("Sister"). Mother's overdose was firmly established as occurring on October 4, 2005.

The State filed charges against Hannon, alleging that the molestation occurred "on or about October 3, 2005." The probable cause statement attached to the charges contained a statement from police Detective Dana Pickett. The statement read, "I was informed by [Victim], who is 11 years old, that the day before his mom overdosed, the subject Nathan Hannon came over to his home. [Victim] said that Hannon placed his hand on [Victim's] penis and later placed Hannon's penis in [Victim's] butt."

Hannon's jury trial began on October 18, 2010. Victim testified that the molestation occurred on a day he stayed home sick from school. Victim also stated that Sister went to school and Mother left him home alone that day. Victim described how Hannon came to his home looking for Mother, and stated that Hannon eventually molested Victim in Victim's bedroom.

2

After the molestation, Victim testified that he cried on the floor until Sister came home from school. Victim reiterated that the molestation occurred the day before Mother overdosed and Grandmother took custody of the children.

Sister, Mother, and Grandmother also testified at trial. Sister confirmed Victim's story that Sister went to school and Victim stayed home sick the day of the alleged molestation. Sister described coming home from school to find Victim crying. Sister also testified that she saw Hannon leaving the home as she arrived. Victim informed Sister that Hannon "touched him." Sister further corroborated Victim's claim that the molestation occurred the day before Mother overdosed and Grandmother took custody of the children. Mother testified that she suffered a heroin overdose in October of 2005. Mother admitted leaving her children unattended for periods of time and stated that Hannon visited her home every day. Mother also testified that, on the day she overdosed—October 4, 2005—Victim had been complaining to Mother that his "butt hurt." Grandmother testified that she took custody of the children on October 4, 2005. Grandmother remembered the date because it was also her sister's birthday. Grandmother testified that she did not learn of the molestation until 2009, when Victim and Sister returned from a teen education program at their church. Victim then told Grandmother that he was molested by Hannon "when I was with my mom, the day before you got us."

The jury convicted Hannon on two counts of first-degree statutory sodomy.

II.     Post-Trial Procedural History

The trial court held a sentencing hearing on December 2, 2010. At the hearing, the trial court overruled Hannon's motion for new trial and sentenced Hannon to concurrent twelve-year prison sentences. The trial court then questioned Hannon about the effectiveness of Trial Counsel. Hannon raised several complaints about Trial Counsel. One of Hannon's complaints was: "I wanted him to check to see if [Victim] was actually in school instead of home sick during

3

the time this supposed incident happened." The trial court found no probable cause to believe Hannon received ineffective assistance of counsel. After the sentencing hearing, Trial Counsel filed a notice of appeal for Hannon that was three days late.

On March 4, 2011, Daniel Diemer ("Diemer") entered his appearance as Hannon's new attorney for the case and filed a request to re-open the Rule 29.15 hearing because Hannon wanted to plead additional allegations regarding Trial Counsel's effectiveness. The trial court granted Diemer's request and heard additional testimony from Hannon on May 20, 2011. The trial court found that Trial Counsel had unequivocally stated he would file a notice of appeal, but failed to do so in a timely manner. The trial court found Trial Counsel to be ineffective and set aside the judgment and sentences entered earlier. The trial court resentenced Hannon to the same concurrent twelve-year prison terms and again advised Hannon of his right to file a motion for post-conviction relief pursuant to Rule 29.15. Upon questioning by the trial court, Hannon restated his complaints about Trial Counsel's ineffectiveness. The trial court continued the hearing to allow a response from Trial Counsel regarding Hannon's claims.

On June 10, 2011, the hearing resumed with Trial Counsel present. Trial Counsel denied that Hannon requested Victim's school attendance records. Trial Counsel stated that he contacted the school, and school officials advised him that "[o]ne of the children had no record of having been there that year, or that period, that semester." Trial Counsel testified that he assessed the situation and decided the records would not exonerate Hannon because Victim was "constantly absent." Trial Counsel also opined that the records would not aid the defense theory that Hannon could not have molested Victim because Hannon "wasn't anywhere near that home during that time period." Trial Counsel therefore concluded that Victim's presence at school on October 3, 2005, was "insignificant." Hannon's post-trial counsel, Diemer, sought to introduce

4

the actual school attendance records into evidence to impeach Trial Counsel's testimony, but the trial court sustained the State's objection to lack of foundation. The trial court found no probable cause for ineffective assistance of counsel and entered its judgment. Hannon appealed to this Court.

## III.    Hannon's Direct Appeal

This Court affirmed Hannon's convictions in State v. Hannon, 398 S.W.3d 108 (Mo. App. E.D. 2013). In conjunction with his appeal, Hannon also filed a motion seeking to remand his case to the trial court for consideration of newly discovered evidence. This Court separately addressed Hannon's motion for remand as part of our opinion. Id. at 113. In his motion for remand, Hannon asserted that the school attendance records showed Victim was present at school on October 3 and 4, 2005. Id. Hannon maintained that the attendance records "could lead to a retrial or perhaps even an acquittal" because the records contradicted the State's assertion at trial that Victim was molested while at home sick from school on October 3, 2005. Id.

This Court noted that it generally will not remand a case before the conclusion of an appeal if the newly discovered evidence is not sufficient to grant a new trial. Id. Hannon conceded that the deadline to file a motion for new trial under Rule 29.11 had expired. Id. However, this Court noted that "an appellate court has the inherent power to prevent a miscarriage of justice or manifest injustice by remanding a case to the trial court for consideration of newly discovered evidence presented for the first time on appeal." Id. (quoting State v. Terry, 304 S.W.3d 105, 109 (Mo. banc 2010)). This power is within the discretion of an appellate court. Id.

A motion to remand based on newly discovered evidence will be granted when a movant shows that (1) the newly discovered evidence came to the movant's knowledge after the end of trial; (2) the movant's lack of knowledge was not because of a lack of due diligence on his part;

5

(3) the "evidence is so material that it is likely to produce a differen[t] result at a new trial"; and (4) the evidence is neither cumulative or merely of an impeaching nature. Id. We held that Hannon satisfied the first two elements, but not the final two. Id. at 113–14.

Regarding the third element required to support a remand, this Court noted that evidence is considered to "likely produce a different result at a new trial if it is credible and reasonably sufficient to raise a substantial doubt in the mind of a reasonable person as to the result of a new trial." Id. at 114 (quoting State v. Stewart, 313 S.W.3d 661, 666 (Mo. banc 2010)). This Court considered the attendance records at issue credible, but nevertheless found such records were insufficient to raise a substantial doubt in a reasonable person's mind as to the result of the trial. Id. We reasoned that the school attendance records merely demonstrated that Victim incorrectly recalled being absent from school on October 3, 2005, and Victim's mistake did not exclude the possibility that Hannon committed the offenses "on or about October 3, 2005," as the State had charged. Id. Hannon admitted at trial that he was at Victim's home "a whole lot" to use heroin, and Victim testified that Mother sometimes left him alone at night. Id. Thus, this Court concluded that Hannon did not demonstrate that the school attendance records would likely produce a different result at trial. Id.

Regarding the fourth element, this Court acknowledged that although the school attendance records would presumably impeach Victim's testimony about the timing of the events, the records did not show that Victim testified falsely about the acts of molestation. Id. Victim testified about the events five years later, and he could have been confused about the dates. Id. at 115. We also recognized that the testimony of a young victim often contains variations, contradictions, or lapses in memory. Id. at 115. This Court denied the motion for remand, concluding that the school attendance records did not present the "exceptional

circumstances required for this court to exercise its discretion to remand for consideration of the evidence." Id. After addressing Hannon's other arguments, this Court affirmed the trial court's judgment. Id. at 119.

## IV.    Rule 29.15 Post-Conviction Motion

After his direct appeal, Hannon filed a *pro se* Rule 29.15 motion for post-conviction relief. Diemer filed an amended motion on September 23, 2013. The motion court held an evidentiary hearing in February, 2014, and heard testimony from both Hannon and Trial Counsel. The motion court admitted into evidence Victim's school attendance records. After taking the case under submission, the motion court entered its findings of fact, conclusions of law, and judgment concluding that Hannon was denied his constitutional right to effective assistance of counsel for several reasons.

The motion court first stated that Trial Counsel was ineffective for failing to investigate Victim's school attendance records. The motion court noted that the State precisely pin-pointed October 3, 2005, as the day of the assault through its evidence. The motion court emphasized that the State never argued or suggested that the crimes charged against Hannon could have occurred on any date other than October 3, 2005. The motion court also found that Trial Counsel recognized the significance of the State limiting the date of the assault to October 3, 2005, but nevertheless failed to investigate Victim's school attendance records to determine if Victim was reported as being at school on the day Hannon allegedly assaulted Victim at his home. Trial Counsel testified that he contacted Victim's school regarding Victim's attendance, and someone at the school told him that the school did not have a record of Victim being there the week of the molestation. The motion court questioned Trial Counsel's credibility and found his testimony at the February, 2014, hearing inconsistent with his prior testimony in 2011. The motion court expressed additional concerns as to the credibility and truthfulness of Trial Counsel's testimony.

7

For example, Trial Counsel testified that even if the school attendance records showed Victim was present at school on October 3, 2005, he was informed by a school representative that the records could be inaccurate, yet was unable to identify the school representative.

As a result of the evidentiary inconsistencies and vagueness of Trial Counsel's testimony, the motion court rejected Trial Counsel's testimony finding it to be inconsistent and further finding that "there is absolutely no way counsel's efforts could be considered 'thorough.'" The motion court determined that Trial Counsel's failure to investigate the school attendance records was a "gross deviation" from the diligence required of a reasonably competent attorney.

The motion court further concluded that trial counsel's failure to obtain Victim's school attendance records prejudiced Hannon. The motion court noted that Victim was the only witness who could testify that the molestation occurred, and that Mother, Sister, and Grandmother corroborated October 3, 2005, as the date Victim was molested. The motion court found "just one problem with this set of interlocking stories: the school records showed the victim and his sister were incorrect in saying the victim was home from school on October 3, 2005." The motion court explained that, had counsel obtained the records, he would have had support in presenting a defense. The motion court opined that the State would have needed to completely restructure the case, and there was "simply no way to know for sure whether or not the prosecution could have convinced a jury beyond a reasonable doubt that [Hannon] was guilty." Accordingly, the motion court found that Hannon demonstrated a reasonable probability that the outcome of the trial would have been different but for counsel's failure to obtain the school attendance records.[2]

_____

[2] The State argues in Points One and Three on appeal that the motion court erred in two other respects. First, the motion court concluded that Trial Counsel was ineffective for failing to

8

The motion court granted Hannon's motion for post-conviction relief and granted him a new trial. The State appeals.

## Points on Appeal

The State raises three points on appeal. In Point One, the State argues that the motion court clearly erred in finding that Trial Counsel was ineffective for failing to object to the testimony of Sister and Mother at trial. Specifically, the State asserts that Hannon's claim was noncognizable, that Hannon waived this claim, and that Trial Counsel's decision not to object was reasonable trial strategy. In Point Two, the State argues that the motion court clearly erred in finding that Trial Counsel was ineffective for failing to obtain Victim's school attendance records. Specifically, the State asserts that Trial Counsel could not have been ineffective because the school records would have served as merely impeachment evidence, Trial Counsel's decision not to obtain and introduce the attendance records was reasonable trial strategy, the attendance records would not have changed the jury's decision, and Hannon was barred from relitigating factual issues that already had been decided on direct appeal. In Point Three, the State argues that the motion court clearly erred by exceeding the scope of its authority to review under Rule 29.15. Specifically, the State argues that the motion court identified errors by Trial Counsel that Hannon did not raise in his amended motion when the motion court found that Trial Counsel demonstrated a "pattern of ineffectiveness."

object to hearsay testimony made by Sister and Mother. Second, the motion court concluded that Trial Counsel was ineffective because his mistakes showed a pattern of ineffectiveness, and that it was clear that "counsel's representation of Movant was ineffective in many respects." For brevity, we will not elaborate on these findings and conclusions of the motion court because we do not reach Points One and Three on appeal.

## Standard of Review

Appellate review of a Rule 29.15 judgment is limited to whether the motion court's findings of facts and conclusions of law are clearly erroneous. Moore v. State, 328 S.W.3d 700, 702 (Mo. banc 2010); Rule 29.15(k). A motion court's findings and conclusions are presumptively correct. Vaca v. State, 314 S.W.3d 331, 334 (Mo. banc 2010). This Court will overturn a motion court's findings and conclusions only if we are left with a "definite and firm impression that a mistake has been made" after reviewing the entire record. Id.

## Discussion

Each of the State's three points on appeal asserts that the motion court clearly erred in granting Hannon's Rule 29.15 motion. The State argues in Point Two that the motion court clearly erred in finding Trial Counsel ineffective for failing to obtain Victim's school attendance records. We disagree. Because we hold that the motion court was not clearly erroneous in finding Trial Counsel's failure to obtain the school attendance records constituted ineffective assistance of counsel warranting post-conviction relief, we need not address the issues raised by the State in Points One and Three of its appeal.

The State contends that Trial Counsel's decision not to obtain the Victim's school attendance records was a reasonable trial strategy that may not now be questioned. The State further posits that even if Trial Counsel's strategy is deemed unreasonable, Hannon was unable to demonstrate that Trial Counsel's failure to obtain and utilize the attendance records provided the required Strickland[3] prejudice entitling him to post-conviction relief. Lastly, the State argues that factual issues decided by this Court in Hannon's direct appeal cannot be relitigated in his post-conviction proceedings. See Hannon, 398 S.W.3d at 113–14.

---

[3] Strickland v. Washington, 466 U.S. 668 (1984).

10

To prevail on a claim of ineffective assistance of counsel, the movant must show by a preponderance of the evidence that (1) his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) he was prejudiced thereby. Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987) (citing Strickland, 466 U.S. at 687). To satisfy the performance prong of the Strickland test, the movant must overcome the strong presumption that any challenged action was sound trial strategy. Zink v. State, 278 S.W.3d 170, 176 (Mo. banc 2009). Overcoming this presumption requires that the movant point to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Id. The prejudice prong is satisfied only if the movant demonstrates that, absent the claimed errors, there is a reasonable probability that the outcome of the proceeding would have been different. Id.

## I. Performance Prong

A trial attorney has a duty to investigate all aspects of a defendant's case. Ervin v. State, 423 S.W.3d 789, 793 (Mo. App. E.D. 2013). "In every criminal case ... counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Barton v. State, 432 S.W.3d 741, 759 (Mo. banc 2014) (citing Strickland, 466 U.S. at 691). The "duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." Johnson v. State, 388 S.W.3d 159, 165 (Mo. banc 2012). Counsel is not judged as ineffective simply because, in retrospect, a decision may seem to be an error in judgment. Johnson v. State, 125 S.W.3d 872, 877 (Mo. App. S.D. 2003). However, a particular decision not to investigate must be directly assessed for reasonableness in light of all the circumstances, "applying a heavy measure of deference to counsel's judgments." Barton, 432 S.W.3d at 759 (quoting Strickland, 466 U.S. at

11

691). "Strategic choices made after less than a thorough investigation are only reasonable to the extent that reasonable professional judgment would support the choice not to investigate further." Anderson v. State, 66 S.W.3d 770, 776 (Mo. App. W.D. 2002).

We find Smith v. State instructive. 370 S.W.3d 883, 884 (Mo. banc 2012). In Smith, two men robbed a gas station. Kyle Carroll, was charged with the robbery and pleaded guilty. Id. Carroll's accomplice remained at large. Id. Subsequently, a jailhouse informant offered to testify that Smith was the accomplice in exchange for a plea agreement, and Smith was ultimately convicted. Id. at 884–85. Smith filed a motion for post-conviction relief, claiming that his attorney was ineffective for failing to interview and potentially call Carroll as a witness at trial. Id. at 885. At the post-conviction hearing, Carroll testified that Smith's lawyer never contacted him. Id. Carroll further testified that had he been called as a witness at Smith's trial, he would have sworn that Smith was *not* the accomplice. Id. Smith's trial counsel testified that he had assumed Carroll's testimony would be bad for Smith, but that even if Carroll's testimony was helpful for Smith, the prosecution would have impeached Carroll. Id. The motion court granted Smith's motion for post-conviction relief, and the State appealed. Id.

The Supreme Court noted that counsel never contacted, questioned, or otherwise investigated Carroll. Id. at 886. The Court held that failing to determine the substance of Carroll's testimony and not calling Carroll as a witness when his testimony could have assisted the defense constituted an omission by counsel falling outside the "wide range" of competent, professional assistance required of counsel. Id. The Supreme Court rejected the State's argument that the decision not to call Carroll was reasonable trial strategy noting that strategic decisions can be made only "after a thorough investigation" of the facts relevant to the possible strategies. Id. Counsel did not investigate Carroll, and therefore could only speculate as to what

12

Carroll would testify about. Id. Because Counsel was therefore unaware of the possible strategies available to him as a result of Carroll's testimony, the Smith Court affirmed the motion court's finding that counsel could not make a valid strategic decision whether or not to call Carroll as a witness, and thereby, was ineffective. Id.

Counsel's failure to investigate potential witness testimony in Smith is virtually indistinguishable from Trial Counsel's failure to investigate the school attendance records, which recorded Victim as being present at school on October 3, 2005, when Victim claimed he was sodomized by Hannon at his home. We first note that the motion court's order sometimes refers to Trial Counsel's deficiency as a "failure to investigate" the issue of the school records and alternatively characterizes Trial Counsel's investigation as "not sufficiently thorough." While this terminology appears somewhat inconsistent, a careful review of the motion court's order and judgment resolves any question we might have as to the conduct deemed constitutionally deficient by the motion court. The record before us is clear that the motion court did not believe Trial Counsel's testimony explaining his conduct. The record demonstrably confirms that the motion court found Trial Counsel's February, 2014, testimony regarding his efforts to obtain the Victim's attendance records lacking in credibility. Specifically, the motion court found "counsel did nothing to investigate these matters, except for his vague claim that he contacted 'the school.'" The motion court further found, "Finally, and most troubling of all with regard to the issue of the school records, there is counsel's changing of his story with regard to whether Movant had asked him to get the school records, and about what he had done about getting the records." The motion court dedicated several pages of its judgment doubting the credibility of Trial Counsel with regard to the issue of the school records, leading the motion court to state "Counsel's multiple vagaries and avoidance of direct answers to questions about whether he

13

attempted to obtain the school records convince this Court counsel did not make a reasonable attempt to obtain the records." Consequently, the motion court rejected Trial Counsel's testimony as to his purported investigative efforts, and found that Trial Counsel had undertaken no investigation at all. Whether we would so react to Trial Counsel's testimony is inconsequential to our analysis as we are limited by our standard of review and defer to the factual findings, including credibility determinations, made by the motion court. See Barton v. State, 432 S.W.3d 741, 760 (Mo. banc 2014) (we must defer to "the motion court's superior opportunity to judge the credibility of witnesses"); see also State v. Antwine, 743 S.W.2d 51, 66 (Mo. banc 1987) (interpreting the clearly-erroneous standard in the Batson[4] context, "if the trial court's account of the evidence is plausible in light of the record viewed in its entirety, an appellate court may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." (internal punctuation omitted)).

As in Smith, where counsel never investigated the existence of potentially exculpatory evidence, the motion court found that Trial Counsel never attempted to obtain Victim's school attendance records, which recorded that Victim was at school on the day of the alleged sexual abuse. In both cases, counsel failed to obtain readily available evidence necessary for counsel to make a reasonable informed decision as to how to best defend against the charges. Without knowledge of the contents of the school attendance records, Trial Counsel could not make an informed decision regarding the use the school records in Hannon's defense at trial.

The State suggests that Trial Counsel employed a reasonable trial strategy in deciding not to obtain the records. Trial Counsel testified that he had informally contacted the school through a "back channel" and was told that Victim had not been present the entire week of the offense,

---

[4] Batson v. Kentucky, 476 U.S. 79 (1986).

14

and that, even if Trial Counsel had obtained the attendance records, the records might not be accurate because the school "would often keep names in the book in order to qualify for money from the State." The State's argument is unavailing because, as noted above, the motion court was distrustful of Trial Counsel's testimony as to his "back channel" efforts. The motion court aptly addressed the State's argument when it found that Trial Counsel's "back channel" communication was not a "thorough" investigation:

> [T]he State's suggestion that counsel's investigation into the question of the school records was "thorough" is risible. Counsel knew the question of whether the victim was in school on October 3, 2005 was significant. ... Counsel then failed to get the records. Counsel cannot remember the name of the person he says he contacted, nor the job title nor the position with the schools, nor has counsel articulated any reason why this mysterious person would be in a position to have access to the records, or knowledge that such records would not be reliable.

When viewing the motion court's reference to mysterious persons, Trial Counsel's lack of memory, and lack of any articulated reason for a conclusion that the school records would not be helpful, we are persuaded that the motion court's reference to a "thorough" investigation is synonymous with the absence of any investigation. We fastidiously recognize that Courts should rarely second-guess counsel's strategic choices when counsel has investigated the possible strategies. Middleton v. State, 103 S.W.3d 726, 736 (Mo. banc 2003). "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance." Anderson v. State, 196 S.W.3d 28, 33 (Mo. banc 2006). Here, had Trial Counsel made an objectively reasonable decision not to obtain and review Victim's school attendance records, we would not second-guess that decision. However, our initial inquiry is whether Trial Counsel undertook to investigate the potential trial strategies that the school attendance records would have afforded him. The motion court, following a thorough review and comparison of the Trial Counsel's testimony at two separate hearings, found that

15

Trial Counsel had not undertaken the investigation required of him (thorough or otherwise) to assure Hannon his constitutional guaranty to effective assistance of counsel. As noted above, the motion court's findings are largely based upon its credibility findings and overriding disbelief of Trial Counsel's testimony about Victim's school attendance record and his "back channel" contact with school officials about Victim's attendance. While we give great deference to trial counsel's strategy in post-conviction proceedings, this deference is counter-balanced by our limited review on appeal and the deference we afford the motion court's findings of fact and credibility determinations. See Barton, 432 S.W.3d at 760.

The State further argues that Hannon is precluded from pursuing post-conviction relief based upon Trial Counsel's failure to obtain the school attendance records because this issue was previously raised on Hannon's direct appeal, and issues decided on direct appeal cannot be relitigated on a theory of ineffective assistance of counsel, citing Shifkowski v. State, 136 S.W.3d 588, 590 (Mo. App. S.D. 2004). We find the issue raised by Hannon in his post-conviction motion to be different. On direct appeal, Hannon argued that his discovery of the proffered school records required a remand of his case for a new trial. Our court determined that the school attendance records were "merely of an impeaching nature," which precluded a remand to the trial court for consideration of newly discovered evidence. Hannon, 398 S.W.3d at 114–15. The failure to impeach a witness, the State argues, is not ineffective assistance of counsel unless such action would have provided a viable defense or changed the outcome of trial. See Woods v. State, 458 S.W.3d 352, 366–67 (Mo. App. W.D. 2014). Woods is inapposite and does not support the State's argument. Unlike Woods, the issue here before us is not counsel's failure to impeach, but Counsel's inability to reasonably determine whether or not to impeach the State's witnesses with the school attendance records. The motion court found Trial Counsel

16

ineffective for failing to investigate the school attendance records, and thus Trial Counsel was unable to reasonably decide whether or how to use those records for impeachment purposes.

The State's evidence as to the occurrence of the alleged sexual assault was time specific. The motion court found that Trial Counsel did not investigate Victim's school attendance records, which could have provided him an opportunity to directly contradict the State's evidence relating to the alleged assault. Giving the motion court's factual findings the deference required under our standard of review, we hold that the motion court's finding that Trial Counsel's failure to investigate fell outside the wide range of professional competence was not clearly erroneous.

## II. Prejudice Prong

### A. Relitigation of Prejudice

Having concluded that trial counsel was ineffective for failing to obtain Victim's school attendance records, we now consider whether, under Strickland, there was a reasonable probability Hannon was prejudiced in that the outcome of his trial might have been different. In addressing the prejudice requirement of Hannon's motion for grant of post-conviction relief, the State reasserts its position that issues decided on direct appeal cannot be relitigated in a post-conviction proceeding alleging ineffective assistance of counsel. See Shifkowski, 136 S.W.3d at 590 (interpreting whether review for plain error on direct appeal precludes that same point from being relitigated in a post-conviction motion). In the motion for remand that was considered with Hannon's direct appeal, this Court refused to remand the case to the trial court to consider newly discovered evidence—the school attendance records. Hannon, 398 S.W.3d at 113. The State suggests that this ruling is determinative of Hannon's post-conviction relief motion because this Court, in denying the motion for remand, determined that the school attendance records were "not likely to produce a different result at a new trial." Id. at 114. The State argues that this

ruling parallels a finding of no Strickland prejudice, and therefore the issue of prejudice had already been litigated and may not now be raised in Hannon's motion for post-conviction relief. We disagree and hold that these two standards—"not likely to produce a different result at a new trial" and "a reasonable probability that the outcome would have been different" under Strickland—to be different standards of proof of prejudice. We are aware of no Missouri authority precluding a finding of Strickland prejudice in a post-conviction proceeding even though an appellate court previously has denied a remand on the grounds that the newly discovered evidence is "not likely to produce a different result at a new trial."

The standard of proving prejudice for a motion to remand for newly discovered evidence appears to be outcome-determinative: whether the newly discovered evidence is likely to produce a different result at trial. However, outcome-determinative prejudice and Strickland prejudice, while similar, are distinct and separate principles, and the litigation of one principle in a direct appeal does not necessarily preclude the litigation of the other in a post-conviction proceeding. See Deck v. State, 68 S.W.3d 418, 427–28 (Mo. banc 2002). "Strickland clearly and explicitly holds that an outcome-determinative test cannot be applied in a post-conviction setting." Id. at 427 (citing Strickland, 466 U.S. at 693). The reason these tests differ from one another "is explained by the very different focuses of the inquiries under each standard." Id. For unpreserved error, the trial court cannot normally be accused of error in its rulings, much less prejudicial error. Id. But in order to serve the need for accuracy in the outcome of a trial, appellate courts have the discretion to nonetheless review for plain error if manifest injustice would otherwise occur. Id. at 427–28. This need for accuracy in a criminal trial also underlies the rationale for a motion to remand on direct appeal for newly discovered evidence. See State v. Williams, 673 S.W.2d 847, 848 (Mo. App. E.D. 1984) (this Court was "cognizant of the

18

perversion of justice which could occur if we were to close our eyes to the existence of the newly discovered evidence."). Importantly, the standard on direct appeal presupposes "that all the essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged." Deck, 68 S.W.3d at 428 (quoting Strickland, 466 U.S. at 694).

By contrast, a post-conviction motion alleging ineffective assistance of counsel asserts "the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower." Id. (quoting Strickland, 466 U.S. at 694). Therefore, the question is not whether the error would likely have produced a different result, but whether defendant suffered a genuine deprivation of his right to effective assistance of counsel in which the Court's "confidence in the fairness of the proceeding is undermined." Id.

Deck noted that, for most cases, an error that is not outcome-determinative on direct appeal will also fail the test for Strickland prejudice. Id. However, the distinction in these standards is important because in some cases, the application of these two tests may produce different results. Id. Therefore, a finding on direct appeal of the absence of outcome-determinative prejudice does not necessarily preclude a finding of Strickland prejudice in a post-conviction motion sharing the same factual premise because the standard for finding Strickland prejudice is somewhat lower. Id.

On direct appeal this Court found that the school attendance records were not outcome-determinative: the records were "not likely to produce a different result at a new trial." Hannon, 398 S.W.3d at 114. Accepting this as true, Trial Counsel's failure to obtain the school attendance records may nevertheless rise to the lower standard of Strickland prejudice: a

19

reasonable probability that the outcome of the proceeding would have been different, sufficient to undermine confidence in the outcome of the trial. Zink v. State, 278 S.W.3d at 176.

Because the standards of review are different, this Court's finding on direct appeal that the school attendance records were not likely to produce a different result at trial does not automatically preclude a finding Strickland prejudice by the motion court. Contrary to the State's contention, the issues of prejudice, while similar, are not identical.

B.    Strickland Prejudice

Having determined that the motion court could properly consider the issue of the school attendance records in the post-conviction proceedings, we now address the substance of the State's argument: whether the trial court clearly erred in finding that trial counsel's conduct in not obtaining the records satisfied the requirement for Strickland prejudice.

The prejudice prong in Strickland is satisfied if the movant can show that, but for trial counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceeding would have been different. Zink, 278 S.W.3d at 176. As previously stated, and important to our analysis, unlike the outcome-determinative prejudice of plain-error review, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Anderson, 196 S.W.3d at 33–34 (quoting Strickland, 466 U.S. at 694).

The motion court found that Hannon demonstrated a reasonable probability that the outcome of the trial would have been different but for counsel's failure to investigate Victim's school attendance records. The State charged Hannon with committing the crimes "on or about October 3, 2005." We recognize that generally, "in cases dealing with very sensitive subjects, it is common for the testimony of a victim of tender years to contain some variations, contradictions or lapses in memory." State v. Sapien, 337 S.W.3d 72, 77 (Mo. App. W.D. 2011). Thus, in some cases, a victim being mistaken as to the exact date of the crime will not lead to a

20

reasonable probability that the outcome of trial would have been different. In many cases of sexual abuse, the abusive conduct is alleged to have occurred on differing days and at differing times over a long period. That circumstance challenges a victim to recall the precise day or date of the abuse. But here, Hannon is charged with, and Victim testified to only one incident of abuse, which occurred on one particular day. Victim was the only witness who could testify to the alleged abuse. Victim identified Hannon as the perpetrator and claimed the crime happened while he was home from school on the day before his mother overdosed. Because the evidence firmly established that Mother's overdose occurred on October 4, 2005, the molestation only could have occurred on October 3, 2005. The State reinforced Victim's testimony as to the precise date of the abuse with testimony from Sister, Grandmother, and Mother. All three witnesses corroborated the date of October 3, 2005.

The motion court found "just one problem with this set of interlocking stories: the school records showed the victim and his sister were incorrect in saying the victim was home from school on October 3, 2005." Had counsel obtained the school attendance records, the motion court reasoned that the records would have provided Trial Counsel "ammunition" in presenting a defense. The motion court opined that such evidence would have forced the State to completely restructure its case. Accordingly, there was "simply no way to know for sure whether or not the prosecution could have convinced a jury beyond a reasonable doubt that [Hannon] was guilty." As a result, the motion court concluded that Hannon met his burden of proving Strickland prejudice. We agree that the circumstances presented are sufficient to support the motion court's finding that Hannon suffered a genuine deprivation of his right to effective assistance of counsel so as to undermine the motion court's confidence in the fairness of the Hannon's trial.

21

The prejudice suffered by Hannon as a result of trial counsel's conduct is no less than the prejudice demonstrated in Smith. In Smith, the witness (Carroll) would have testified that Smith was not his accomplice, which would have refuted the jailhouse witness's testimony to the contrary. See 370 S.W.3d at 884–85. Whether or not the witness would have so testified was immaterial to the Supreme Court's holding because trial counsel, as a result of his failure to investigate, was unaware of the possible strategies available to the defense. Id. at 866. The Supreme Court held that the motion court did not clearly err in finding a reasonable probability that Carroll's credible testimony would have changed the outcome of the case. Id. Here, during the trial, the State's witnesses insisted that the crime occurred while Victim was home from school on October 3, 2005. The school attendance records directly refuted this testimony by showing that Victim was in school, and thus not at home sick on October 3, 2005. The school records had the potential to severely damage the Victim's credibility and cast doubt on the memory of the corroborating witnesses. As in Smith, Trial Counsel's failure to obtain these records is sufficient to undermine confidence in the outcome of Hannon's trial because Trial Counsel was unaware of the possible strategies available to him through the use or nonuse of the school records. In some cases, inaccuracies as to time and date of an occurrence may not rise to a level of impeachment sufficient to undermine the confidence in a jury's verdict. We are not convinced that this case falls within that category. Therefore, we hold that the motion court did not clearly err in finding a reasonable probability that the outcome of the proceeding would have been different had Trial Counsel investigated the school attendance records and had those records available to introduce as evidence at trial.

Because the motion court did not clearly err in finding that Hannon demonstrated both the performance and prejudice prongs of <u>Strickland</u>, the finding of ineffective assistance of counsel was not clearly erroneous. Point Two is denied.

<u>Conclusion</u>

The judgment of the motion court granting Hannon's Rule 29.15 motion for post-conviction relief is affirmed.

_____
KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., dissents in separate opinion.
Lisa Van Amburg, C.J., concurs.



# In the Missouri Court of Appeals
## Eastern District

<u>DIVISION FOUR</u>

| | | |
|---|---|---|
| NATHAN HANNON, | ) | No. ED102443 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of City of St. Louis |
| v. | ) | |
| | ) | |
| STATE OF MISSOURI, | ) | Hon. Edward W. Sweeney, Jr. |
| | ) | |
| Appellant. | ) | Filed: March 15, 2016 |

<u>DISSENT</u>

Without a doubt, the procedural aspects of this case are unusual. So too is the judgment of the motion court, which is 83 pages in length and considers issues not raised in the amended post-conviction motion. There is, however, nothing particularly unusual about the trial conducted in this case, nor the law governing the prosecution of child molestation cases and claims of ineffective assistance of counsel. Because I find Movant has failed to demonstrate either prong of the <u>Strickland</u> analysis, I respectfully dissent.

<u>Performance</u>

The first issue to be resolved is whether the motion court found Trial Counsel ineffective for failing to "thoroughly" investigate the school records by not obtaining a copy of the records or found Trial Counsel ineffective for conducting no investigation at all into these records. These two separate and distinct alleged omissions were squarely before the motion court. After combing through the motion court's judgment, the

majority concludes the motion court found Trial Counsel had undertaken no investigation at all into the school records.

While the motion court found Trial Counsel lacked credibility, the court never explicitly found that Trial Counsel failed to undertake any investigation at all. The motion court did, however, make explicit findings that Trial Counsel's informal investigation and failure to obtain the records were unreasonable. Even if it could be said the motion court found Trial Counsel made no investigation into the school records at all, Movant has still failed to demonstrate that he received ineffective assistance of counsel.

Trial Counsel testified he made an informal inquiry regarding the school attendance records and ultimately concluded the records would not aid the defense theory that Movant was not the perpetrator and, therefore, Victim's presence at school on October 3 was insignificant. The relevant question is whether Trial Counsel's failure to obtain the records indicating Victim's attendance at school on October 3, 2005 or, in the alternative, Counsel's failure to inquire into the records at all, can be considered a reasonable investigation or a reasonable decision rendering that particular investigation unnecessary. See Barton v. State, 432 S.W.3d 741, 759 (Mo. banc 2014) ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"). If Trial Counsel's informal inquiry revealed Victim was at school on the alleged date of occurrence, consistent with the actual records, and Counsel chose not to obtain the records based on a strategic decision to pursue an alternative defense, such decision would be "virtually unchallengeable." Barton, 432 S.W.3d at 749, quoting Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80

2

L.Ed.2d 674 (1984) ("'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]'").

In this case, the defense's strategy at trial was not to deny Victim had been abused but to argue Movant was not the perpetrator. Movant admitted he frequented Mother's house but asserted he stopped going by the house in August 2005 after getting into an argument with Mother. The defense also suggested the assailant was another man also named Nate who frequented the neighborhood, was familiar with the children, and matched Victim and Sister's physical description of the perpetrator to the extent police included the "other" Nate's photograph in a photo array presented to the children. While neither the motion court nor the majority expressly doubt the reasonableness of the strategy employed, both ultimately find Trial Counsel was required to investigate and utilize the school attendance records to impeach Victim and Sister in order to provide effective representation. Contrary to the assertions otherwise, this amounts to second-guessing Counsel's trial strategy.

Again, "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]'" Barton, 432 S.W.3d at 749, quoting Strickland, 466 U.S. at 690. In rendering their conclusions, the motion court and majority opinion fail to adequately consider the prevailing precedent regarding the prosecution of child molestation cases.

"Time is not essential in child sexual abuse cases because it can be impossible to ascertain specific dates of the sexual abuse." State v. Miller, 372 S.W.3d 455, 464 (Mo. banc 2012). Missouri courts have held that allegations of abuse having occurred during

3

times ranging from a 24-day period to a span of four and one-half years were sufficient for notice and due process purposes. Id. at 465.

Furthermore, as we recognized in Movant's direct appeal, it is firmly established in the law that "in cases dealing with very sensitive subjects, it is common for the testimony of a victim of tender years to contain some variations, contradictions or lapses in memory." State v. Hannon, 398 S.W.3d 108, 115 (Mo. App. E.D. 2013), quoting State v. Sapien, 337 S.W.3d 72, 77 (Mo. App. W.D. 2011). See also State v. Kelley, 945 S.W.2d 611, 615 (Mo. App. S.D.1997).
"Inconsistencies or contradictions in statements by a young child relating a sexual experience do not, by themselves, deprive the testimony of all probative force." State v. Mattic, 84 S.W.3d 161, 169 (Mo. App. W.D. 2002), J.M.G. v. Juvenile Officer, 304 S.W.3d 193, 196 (Mo. App. W.D. 2009).

In light of the fact that the State charged Movant with acts occurring "on or about October 3, 2005," and the clear legal precedent that time is not essential in child sexual abuse cases and that variations, contradictions, and lapses in memory of child witnesses are generally accepted, Trial Counsel's decision not to investigate or to obtain the school records was not unreasonable trial strategy. Victim was 8 years old at the time of the offense, 11 years old when he first revealed the abuse, and 13 years old at the time of trial. Sister was 10 years old at the time of the offense and 15 years old at the time of trial. The evidence at trial was that Mother was a drug addict who was frequently "high," people came to the home to sell and use drugs, Mother frequently left the children alone for periods of time, and Movant visited the home daily. The point of reference for the children regarding the date of the assault was that the assault occurred the day before they

4

had to call for help after discovering their Mother overdosed on heroin and were subsequently removed from their home. It was reasonable trial strategy for Trial Counsel to have chosen a defense strategy based upon on Victim's honest mistake in identifying his abuser which did not require Counsel to attack the credibility of the young, sympathetic witnesses on what is largely a legally insignificant collateral detail.

Prejudice

With regard to prejudice, the motion court and the majority find Movant demonstrated a reasonable probability that the outcome of the trial would have been different but for Trial Counsel's failure to investigate Victim's school attendance records. In doing so, both place undue significance on the fact that the State presented evidence and argument that the assault occurred on October 3, 2005. The motion court found impeaching Victim and Sister with the school records would have forced the State to completely restructure its case and there was "simply no way to know for sure whether or not the prosecution could have convinced a jury beyond a reasonable doubt the [Movant] was guilty." The majority opinion contends the State's evidence was time-specific and goes so far as to say the evidence established "the molestation only could have occurred on October 3, 2005."

This position fails to adequately recognize the firmly established legal principles that time is not essential in child abuse cases and it is common for there to be variations, contradictions, or lapses of memory in the testimony of a victim of tender years. Instead, both courts assert this evidence with the potential to reveal the faulty memory of an eight-year-old victim and his ten-year-old sibling as to the singular detail of whether Victim

5

was home sick on the day of the assault five years after the fact would be so devastating to the prosecution's case that it undermines confidence in the outcome of Movant's trial.

Although analyzed under a slightly different standard, this Court's opinion in Movant's direct appeal succinctly sets forth why the motion court's and the majority's reasoning is faulty:

> Even if we assume the attendance records are credible, they are not reasonably sufficient to raise a substantial doubt in a reasonable person's mind as to the result of a new trial. The school records would merely demonstrate that [Victim] incorrectly recalled being absent from school on October 3, 2005. The fact that [Victim] was at school that day does not exclude the possibility that [Movant] committed the offenses before or after school that day or another day that was "on or about October 3, 2005." Mother testified that prior to her heroin overdose, she left her children unattended for periods of time and got "high" every day. [Victim] testified that "when [he] came home at night, [he] came home sometimes by [himself]." According to the testimony of Mother and [Victim], [Movant] visited their house every day or every other day until the date of the incident. Although [Movant] denied going to their home after his August 2005 argument with Mother, he admitted that before the argument he went there "a whole lot" to acquire and use heroin and that "sometimes [he] wouldn't go down there maybe for a day."

State v. Hannon, 398 S.W.3d 108, 114 (Mo. App. E.D. 2013). It unclear why these facts and the underlying rationale are no longer compelling. Today, as it was at the time of Movant's direct appeal, it is simply of no moment whether the assault occurred during the school day on October 3, or before or after school on October 3, or on another day that was "on or about October 3, 2005."

In support of its opinion, the majority compares the case *sub judice* to Smith v. State, 370 S.W.3d 883 (Mo. banc 2012), characterizing it as "virtually indistinguishable." Smith involved counsel's failure to interview and potentially call as a witness the man who had previously pled guilty to the crime and who was alleged to be Smith's accomplice. Id. at 885. During post-conviction proceedings, it was revealed that Smith's

6

alleged accomplice would have testified favorably for Smith, testifying Smith was not involved in the crime. Id. This testimony was *exculpatory* evidence going directly to whether Smith was guilty of the crime and could have provided Smith a complete defense to the charges. Exculpatory evidence is "[e]vidence tending to establish a criminal defendant's innocence." Black's Law Dictionary 637 (9th ed. 2009). The instant case involves the alleged failure to investigate and utilize *impeachment* evidence, "[e]vidence used to undermine a witness's credibility." Id. "'The failure to impeach a witness will not constitute ineffective assistance of counsel unless such action would have provided a viable defense or changed the outcome of the trial.'" Woods v. State, 458 S.W.3d 352, 366-67 (Mo. App. W.D. 2014), quoting Thompson v. State, 437 S.W.3d 253, 263 (Mo. App. W.D. 2014). The school records would have served only to impeach Victim's and Sister's testimony that Victim was home sick on October 3, 2005. In no way do the school records provide a complete defense or establish Movant's innocence to the charge of first-degree statutory sodomy.

Although not explicitly stated, implicit in both the motion court's judgment and the majority opinion is a finding that Trial Counsel not only had to "investigate" the school attendance records, but also was required to obtain said records and to utilize those records to impeach Victim and Sister. To be clear, the underlying premise of these rulings is that anything other than this specific attack on the credibility of the child witnesses was unreasonable trial strategy resulting in prejudice.

Because I am left with a definite and firm impression that the motion court findings and conclusions are in error, I would reverse the motion court's judgment granting Movant post-conviction relief. Movant has failed to demonstrate Trial

7

Counsel's performance did not conform to the degree of skill, care, and diligence of a reasonably competent attorney or that there is a reasonable probability that, but for Counsel's performance, the outcome of the proceeding would have been different.

_Sherri B. Sullivan_
Sherri B. Sullivan, P.J.