**STATE of Missouri, Respondent,**

v.

**Nathan HANNON, Appellant.**

No. ED 96915.

Missouri Court of Appeals, Eastern District, Division Four.

May 7, 2013.

109

Daniel E. Diemer, Clayton, MO, for appellant.

Timothy A. Blackwell, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Nathan Hannon (Defendant) appeals the judgment of conviction entered by the Circuit Court of the City of St. Louis after a jury found him guilty of two counts of first-degree statutory sodomy against T.S. Defendant claims the trial court erred in: (1) overruling his hearsay objection and allowing T.S.'s grandmother to testify concerning T.S.'s out-of-court statements; (2) allowing T.S.'s sister to testify as to T.S.'s out-of-court statements; and (3) not admitting T.S.'s school attendance records at the Rule 29.07(b)(4) inquiry and not allowing Defendant to file a new motion for new trial. Defendant also filed a motion to remand the case to the trial court for consideration of newly discovered evidence, and we ordered the motion taken with the case. We deny Defendant's motion to remand and affirm the trial court's judgment.

### Factual and Procedural Background

Viewed in the light most favorable to the verdict, the evidence at trial revealed that on October 3, 2005, T.S., then eight years old, was absent from school due to illness. T.S. was home alone when Defendant, a friend of T.S.'s mother (Mother), arrived at T.S.'s home and entered his bedroom. Defendant touched T.S.'s penis and inserted his penis in T.S.'s anus. The next day, Mother suffered a heroin overdose, and T.S. and his siblings moved in with their grandmother. In 2009, T.S. informed his grandmother about the incident with Defendant. T.S. also described the event in a 2009 interview with Beverly Tucker, an employee of the Children's Advocacy Center (CAC).

The State charged Defendant with two counts of first-degree statutory sodomy against T.S. "on or about October 3, 2005." The trial court scheduled the matter for a jury trial.

Prior to trial, the State filed a notice pursuant to section 491.075.3 that it planned to offer in evidence the out-of-court statements of T.S. to his sister, his grandmother, and Ms. Tucker, among others. The trial court conducted a pre-trial hearing to determine the admissibility of the statements. Ms. Tucker testified at the hearing that she made a video recording of her interview with T.S. The State introduced the video and played it for the trial court. In the CAC interview, T.S. stated that he was home alone when Defendant entered his bedroom and touched his "stuff," or what he used to "pee." T.S. also advised Ms. Tucker that he remembered "screaming" because Defendant's "stuff" was "in [his] butt" and it hurt. T.S. stated that the next day, Mother overdosed and T.S. went to live with his grandmother. When Ms. Tucker asked T.S. whether he was going to return to live with Mother, T.S. responded that he hadn't decided yet and that it was his decision. T.S. informed Ms. Tucker that

Mother "want[ed] [T.S. and his siblings] back."

T.S.'s grandmother testified at the hearing that in 2009, T.S. and his sister attended a church program on sexual assault of children. T.S.'s grandmother stated that after the program, T.S. approached her and said, "Nanna, I have something I want to tell you." The grandmother testified that T.S. "looked sad and teary-eyed" and informed her that Defendant molested him "the day before [his grandmother] got [them]." According to T.S.'s grandmother, T.S. advised her that when he was home alone, Defendant entered his bedroom. T.S.'s grandmother testified: "I asked him did he make him do oral sex on him, and he told me he put it in his bottom" and that it hurt. The grandmother stated that when she asked T.S. why he had not previously reported the incident, T.S. responded that he was scared and ashamed and did not think anyone would believe him. The trial court found "sufficient indicia of reliability for the statements to be admissible pursuant to section 491.075.1 with regard to the two witnesses who testified, and the statements the child made to those two witnesses."

At trial, the State presented the testimony of T.S. T.S. stated that during the time period he lived with Mother, "when [he] came home at night, [he] came home sometimes by [himself]." T.S. testified that Defendant came to their house every other day to take drugs with Mother. T.S. stated that on October 3, 2005, when T.S. was absent from school, Defendant touched T.S.'s penis and inserted his penis in T.S.'s anus.

The State offered the testimony of T.S.'s sister. The sister stated that T.S. informed her that Defendant "touched him." T.S.'s sister testified that she never asked T.S. for details about the occurrence.

The State also introduced Mother's testimony. Mother testified that prior to her heroin overdose in October 2005, she consumed drugs and got "high" every day. Mother stated that she would leave her children unattended for periods of time. Mother also testified that Defendant visited their home every day.

The State presented the testimony of T.S.'s grandmother, who stated that T.S. informed her in 2009 that Defendant had "touched" and "molested" him on October 3, 2005, the day before Mother's overdose. T.S.'s grandmother stated that she asked T.S., "how, what did he do?" Defendant's counsel objected on the ground of hearsay, asserting that T.S. had already testified and "the purpose of 491 is to fill in where the child can't." The trial court overruled the objection. The grandmother testified that T.S. advised her that he was home alone when Defendant arrived, entered his room, and "stuck it in his behind."

The State offered the testimony of Dana Pickett, a sex crimes detective with the City of St. Louis Police Department. Detective Pickett testified that while she was investigating the alleged incident, she learned that T.S. had reported that the event occurred the day before Mother's drug overdose. Detective Pickett stated that according to a report she located, Mother's overdose occurred on October 4, 2005.

The State presented the testimony of Ms. Tucker. The State also played for the jury the video recording of her interview with T.S.

Defendant testified at trial that prior to August 2005, he was at Mother's home "a whole lot" and that "sometimes [he] wouldn't go down there maybe for a day." Defendant stated that he went to their home to acquire and use heroin with Mother. Defendant denied going to Mother's home after having an argument with her

about heroin in August 2005. Defendant denied committing the charged offenses.

The verdict director for each count provided that to find Defendant guilty, the jury must find that Defendant committed the charged acts "on or about October 3, 2005." The jury found Defendant guilty on both counts. Defendant moved for a new trial, and the trial court denied the motion. The trial court sentenced Defendant to concurrent terms of twelve years' imprisonment for each count.

After pronouncing the sentence, the trial court conducted an inquiry of Defendant pursuant to Rule 29.07(b)(4). The trial court advised Defendant of his right to file a Rule 29.15 motion for post-conviction relief. The trial court asked Defendant whether counsel failed to do anything that Defendant requested him to do. Defendant responded: "I wanted him to check to see if the kid was actually in school instead of home sick during the time this supposed incident happened." The trial court found no probable cause to believe that Defendant received ineffective assistance of counsel.

Defendant hired a new attorney, who filed a document titled "Request to Re-Open the Rule 29.15 Motion." In the motion, Defendant alleged that trial counsel's "feckless efforts" in filing a "completely ineffective" motion for new trial demonstrated ineffective assistance of counsel. Defendant also asserted that trial counsel was ineffective for failing to file a timely notice of appeal. Defendant maintained that he could not have addressed these issues at the Rule 29.07(b)(4) examination and therefore requested that the trial court reopen the inquiry. After a hearing on Defendant's motion, the trial court determined that Defendant's trial counsel was ineffective for failure to file a timely notice of appeal. The trial court granted Defendant's motion to reopen the Rule

29.07(b)(4) inquiry, scheduled the matter for a hearing, and set aside the judgment and sentence.

At the reopened Rule 29.07(b)(4) inquiry, the trial court instructed Defendant's trial counsel to address Defendant's allegation during the initial examination that counsel failed to determine whether T.S. was in school on October 3, 2005. Trial counsel denied that Defendant requested T.S.'s school attendance records. Trial counsel acknowledged that he contacted the school and school officials advised him that "one of the children had no record of having been there that year, or that period, that semester." Trial counsel stated that he subsequently assessed the situation and decided that because T.S. was "constantly absent," the records would not necessarily exonerate anyone. In addition, trial counsel determined that obtaining the records would not aid the defense theory that Defendant could not have committed the offenses because he "wasn't anywhere near that home during that time period." Trial counsel stated that he therefore concluded that T.S.'s presence at school on October 3, 2005 was "insignificant."

Defendant's post-trial counsel sought to introduce T.S.'s attendance records for the 2005–2006 school year for the purpose of impeaching trial counsel's testimony concerning the existence of the records. The prosecutor objected on the grounds of lack of foundation as a business record and lack of testimony as to the authenticity of the records. The trial court sustained the State's objection on the basis of lack of foundation.

Near the end of the reopened Rule 29.07(b)(4) inquiry, post-trial counsel asked to "reserve the right ... to call [trial counsel] after the post-conviction relief motion ... is properly filed." The trial court responded: "I don't think this hearing today in court closes the possibility of

a future hearing on a Rule 29.15 motion.... The hearing you're talking about is ... a whole separate matter." The trial court entered a judgment of conviction on both counts and sentenced Defendant to two concurrent terms of twelve years' imprisonment. Defendant appeals.

## Discussion

### A. Defendant's Motion to Remand to the Trial Court

■ After Defendant filed his notice of appeal, he filed in this court a motion to remand the case to the trial court for consideration of newly discovered evidence. We ordered the motion taken with the case. Defendant asserts that T.S.'s school attendance records constitute newly discovered evidence because they show that T.S. was at school on October 3 and 4, 2005, but absent on October 5, 2005. Defendant argues that because the school records "could lead to a retrial or perhaps even an acquittal," we must stay the appeal and remand the case to the trial court for consideration of the records. In response, the State contends that Defendant has failed to show the existence of any of the elements required for this court to remand the case based on newly discovered evidence.

■ Defendant concedes that the deadline to file a motion for new trial pursuant to Rule 29.11 has expired. "Once the time for filing a motion for a new trial has passed, the Missouri rules have no provision for the granting of a new trial based on newly discovered evidence even if the evidence is available prior to sentencing." *State v. Terry*, 304 S.W.3d 105, 109 (Mo. banc 2010). "Additionally, new evidence that is not in the record should not be considered on appeal." *Id.*

■ "Generally, this Court will not remand a case before an appeal is concluded if the lone fact of newly discovered evidence is not enough to grant a new trial." *Id.* "But an appellate court has the inherent power to prevent a miscarriage of justice or manifest injustice by remanding a case to the trial court for consideration of newly discovered evidence presented for the first time on appeal." *Id.* "An appellate court will exercise this power in its discretion." *Id.*

■ To succeed on a motion to remand based on newly discovered evidence, a movant must show: (1) "[t]he facts constituting the newly discovered evidence have come to the movant's knowledge after the end of the trial"; (2) the movant's "lack of prior knowledge is not owing to any want of due diligence on his part"; (3) "[t]he evidence is so material that it is likely to produce a differen[t] result at a new trial"; and (4) "[t]he evidence is neither cumulative only nor merely of an impeaching nature." *Id.* "Such claims succeed *very rarely*." *State v. Lewis*, 388 S.W.3d 252, 256 (Mo.App. S.D.2012) (emphasis in original) (citing *Terry*, 304 S.W.3d 105; *State v. Williams*, 673 S.W.2d 847 (Mo.App. E.D. 1984); *State v. Mooney*, 670 S.W.2d 510 (Mo.App. E.D.1984)).

Defendant demonstrates the existence of the first element required to succeed on his motion to remand. Defendant alleged in his motion that he was not aware until after trial that school attendance records showed that T.S. was at school on October 3, 2005. Defendant's trial counsel confirmed at the Rule 29.07(b)(4) inquiry that he did not obtain any attendance records. Thus, Defendant has shown that the facts constituting the newly discovered evidence came to his knowledge after the end of trial.

Defendant satisfies the second element because he has shown that his lack of prior knowledge about the evidence was not the

result of a want of due diligence. Defendant alleged at the Rule 29.07(b)(4) examination that he asked trial counsel to obtain the records. Trial counsel denied that Defendant requested the records but acknowledged that he contacted the school and school officials advised him that "one of the children had no record of having been there that year, or that period, that semester." Trial counsel stated that he subsequently assessed the situation and decided that because T.S. was "constantly absent," the records would not necessarily exonerate anyone. In addition, trial counsel determined that obtaining the records would not aid the defense theory that Defendant could not have committed the offenses because he "wasn't anywhere near that home during that time period." Trial counsel stated that he therefore concluded that T.S.'s presence at school on October 3, 2005 was "insignificant." Under the circumstances of this case, Defendant has shown that he exercised due diligence to obtain the records but did not further pursue the effort in light of counsel's strategic decision that the records would not assist Defendant at trial.

However, Defendant does not satisfy the final two elements required to prevail on his motion to remand. To establish the third element, Defendant must show that the evidence is likely to produce a different result at a new trial. "Evidence is considered to likely produce a different result at a new trial if it is credible and reasonably sufficient to raise a substantial doubt in the mind of a reasonable person as to the result of a new trial." *State v. Stewart*, 313 S.W.3d 661, 666 (Mo. banc 2010). Even if we assume the attendance records are credible, they are not reasonably sufficient to raise a substantial doubt in a reasonable person's mind as to the result of a new trial. The school records would merely demonstrate that T.S. incorrectly recalled being absent from school on October 3, 2005. The fact that T.S. was at school that day does not exclude the possibility that Defendant committed the offenses before or after school that day or another day that was "on or about October 3, 2005." Mother testified that prior to her heroin overdose, she left her children unattended for periods of time and got "high" every day. T.S. testified that "when [he] came home at night, [he] came home sometimes by [himself]." According to the testimony of Mother and T.S., Defendant visited their house every day or every other day until the date of the incident. Although Defendant denied going to their home after his August 2005 argument with Mother, he admitted that before the argument he went there "a whole lot" to acquire and use heroin and that "sometimes [he] wouldn't go down there maybe for a day." Thus, proof that T.S. was at school on October 3, 2005 is not likely to produce a different result at a new trial.

Defendant also does not satisfy the fourth element, that the evidence is "neither cumulative only nor merely of an impeaching nature." "[I]mpeachment is reason to remand to the trial court to grant a new trial" only in "exceptional circumstances." *Terry*, 304 S.W.3d at 110. Newly discovered evidence may be considered "not merely impeaching" if it is "central to the case" and shows that the defendant was convicted with the aid of perjured testimony. *See id.* at 111 (granting motion to remand where alleged statutory rape victim testified at trial, while pregnant, that the defendant was her only sexual partner at the time of conception, but post-trial DNA test showed that the defendant was not the baby's father).

Here, the school records would presumably impeach T.S.'s testimony that he was absent from school on October 3, 2005, but they do not demonstrate that T.S. falsely testified about Defendant committing the

offenses against him. Instead, the records show that T.S., who was eight years old at the time of the alleged offenses, incorrectly remembered the date he was absent from school when he testified five years later. The fact that T.S. was confused about the date of his absence does not lead to a conclusion that he committed perjury as to that detail or any other portion of his testimony. "[I]n cases dealing with very sensitive subjects, it is common for the testimony of a victim of tender years to contain some variations, contradictions or lapses in memory." *State v. Sapien*, 337 S.W.3d 72, 77 (Mo.App. W.D.2011) (quotation omitted). Therefore, we conclude that the school records do not present the exceptional circumstances required for this court to exercise its discretion to remand for consideration of the evidence. *See State v. Nylon*, 311 S.W.3d 869, 878 (Mo. App. E.D.2010).

Defendant argues that we must remand the case because the circumstances here are similar to those in *State v. Mooney*, 670 S.W.2d 510 (Mo.App. E.D.1984). *Mooney* is distinguishable. There, the alleged victim of molestation was the only witness who testified at trial to the essential factual elements of the offense. 670 S.W.2d at 515. After trial, the alleged victim revealed "that he had made up the story," but the defendant did not learn of the recantation until after the deadline to file a motion for new trial expired. *Id.* at 512, 515. On appeal, the court remanded the case to the trial court with instructions to permit the defendant to file a motion for new trial on grounds of newly discovered evidence. *Id.* at 515–16. Unlike in *Mooney*, T.S. has not recanted his testimony that Defendant touched T.S.'s penis and inserted his penis in T.S.'s anus. The school records simply show that T.S. incorrectly recalled the date of his absence from school. The motion to remand is denied.

### B. Defendant's Points on Appeal

#### 1. Admission of T.S.'s Grandmother's Testimony

■. In his first point on appeal, Defendant argues that the trial court erred in overruling his hearsay objection and allowing T.S.'s grandmother to testify concerning T.S.'s out-of-court statements. More specifically, Defendant maintains that the grandmother's testimony did not provide sufficient indicia of reliability as required under section 491.075 and inappropriately bolstered T.S.'s testimony. The State responds that the trial court did not err because: (1) the totality of the circumstances of T.S.'s statements demonstrated sufficient indicia of reliability; and (2) T.S.'s grandmother's testimony was cumulative to T.S.'s testimony and other evidence at trial and therefore was not outcome determinative.

As an initial matter, Defendant concedes that he did not include this claim in his motion for new trial. "An allegation of error in a jury-tried case that does not challenge the jurisdiction of the court, the sufficiency of the charge, or the sufficiency of the evidence must be preserved in a motion for new trial." *State v. Cook*, 386 S.W.3d 842, 844 (Mo.App. S.D.2012); Rule 29.11(d). Defendant asserts that his trial objection was sufficient to preserve the error because "the original ruling by the trial court was at a pre-trial hearing, and the trial court did not allow defense trial counsel to voice an objection during his ruling." Defendant cites no relevant authority to support this argument and does not explain how objecting during the trial court's pre-trial ruling would have excused him from including the claim of error in his motion for new trial. Accordingly, we conclude that Defendant failed to preserve the error for appellate review.

Defendant requests this court to review his unpreserved claim for plain error. "Issues that were not preserved may be reviewed for plain error only, which requires the reviewing court to find that manifest injustice or a miscarriage of justice has resulted from the trial court error." *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009). "Review for plain error involves a two-step process." *Id.* "The first step requires a determination of whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Id.* (quotation omitted). "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear." *Id.* (quotation omitted). "If plain error is found, the court then must proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice." *Id.* at 607–08 (quotation omitted).

"Section 491.075 provides a hearsay exception in child sexual abuse cases...." *State v. Gaines*, 316 S.W.3d 440, 449 (Mo.App. W.D.2010). Section 491.075.1 provides:

> A statement made by a child under the age of fourteen ... relating to an offense under chapter 565, 566, 568 or 573, performed by another, not otherwise admissible by statute or court rule, is admissible in evidence in criminal proceedings in the courts of this state as substantive evidence to prove the truth of the matter asserted if:

> (1) The court finds, in a hearing conducted outside the presence of the jury that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

> (2)(a) The child ... testifies at the proceedings....

Mo.Rev.Stat. § 491.075.1.[1] "To determine the reliability of a child's out-of-court statements for purposes of Section 491.075, Missouri courts look to the totality of the circumstances." *State v. Thompson*, 341 S.W.3d 723, 729 (Mo.App. E.D.2011). In particular, we consider "the following non-exclusive list of factors: (1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) lack of motive to fabricate; and (4) knowledge of subject matter unexpected of a child of similar age." *Id.* "Other important factors include the lapse of time between when the acts occurred and when the victim reported them and the technique employed by the interviewer." *Id.* "The unifying principle behind these factors is that they all relate to whether the child was particularly likely to be telling the truth when the statement was made." *N.J.K. v. Juvenile Officer*, 139 S.W.3d 250, 256 (Mo.App. W.D.2004) (quotation omitted).

Defendant fails to demonstrate error, plain or otherwise, in the trial court's admission of the grandmother's testimony as to T.S.'s out-of-court statements because the evidence presented at the hearing supports a determination that the statements provided sufficient indicia of reliability. T.S.'s statements were arguably spontaneous because his grandmother did not initiate a discussion with T.S. regarding whether someone had sexually abused him. Instead, T.S. approached her and said, "Nanna, I have something I want to tell you."

T.S. also consistently described the incident. According to T.S.'s grandmother's testimony at the hearing, T.S. informed her that when he was home alone, Defendant entered his bedroom. The grand-

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

mother testified that T.S. stated that Defendant "put it in [his] bottom" and that it hurt. During the recorded CAC interview, T.S. informed Ms. Tucker that he was home alone when Defendant entered his bedroom and touched his "stuff," or what he used to "pee." T.S. also advised Ms. Tucker that he remembered "screaming" because Defendant's "stuff" was "in [his] butt" and it hurt.

The evidence presented at the hearing provides a sufficient basis for a conclusion that T.S. lacked a motive to fabricate his story. Defendant claims that T.S. had a reason to lie because "it appears that there may have been some ongoing attempt by [Mother] to regain custody," but the record of the hearing demonstrates otherwise. T.S. stated in the CAC interview that Mother "want[ed] [T.S. and his siblings] back" but that it was T.S.'s decision. Given T.S.'s belief that he had control over the custody situation, Mother's desire to regain physical custody is not necessarily a reason for T.S. to fabricate his allegations.

The record of the hearing also shows that the remaining factors support a finding of reliability. First, T.S.'s grandmother testified that T.S. "looked sad and teary-eyed" when he made his statements. *See Sprinkle*, 122 S.W.3d at 664 (declarant "acted upset, embarrassed, angry, and shy when disclosing the abuse"). The parties presented no evidence at the hearing that T.S. gained his knowledge of sexual acts from any source other than his own experiences. *See id.* at 665. T.S. explained the lapse of time between the incident and his report to his grandmother by stating that he was scared and ashamed and did not think anyone would believe him. Finally, although Defendant asserts that T.S.'s statements were the result of leading questions, the transcript of the hearing refutes this claim. The grandmother's only leading question was whether Defen-

dant forced T.S. to perform oral sex. Instead of responding "yes," T.S. replied that Defendant "put it in his bottom." We therefore conclude that the record supports a determination that the time, content, and circumstances of T.S.'s statements to his grandmother provided sufficient indicia of reliability.

Defendant contends that because T.S.'s trial testimony contained different details than the grandmother's testimony about T.S.'s out-of-court statements, the trial court should have reevaluated its decision on the admissibility of the statements. We disagree. "The trial court decides whether or not to admit the victim's out-of-court statements based on the information provided at the hearing." *State v. Gaines*, 316 S.W.3d 440, 449 (Mo.App. W.D.2010) (quotation omitted). Thus, we decline to consider whether evidence presented at trial supports a finding of unreliability. *See id.* at 450.

▬▬ Defendant also alleges that the testimony of T.S.'s grandmother inappropriately bolstered T.S.'s testimony because she repeated the date and circumstances of the alleged offenses. "Improper bolstering occurs when the out of court statement of a witness is offered solely to be duplicative or corroborative of trial testimony." *State v. Biggs*, 333 S.W.3d 472, 479 (Mo. banc 2011) (quotation omitted). "Statements admitted pursuant to section 491.075 do not improperly bolster the victim's trial testimony where they are informal and not planned as a substitute for trial testimony and, therefore, do not have the effect of duplicative testimony." *Gaines*, 316 S.W.3d at 450. "A child victim's out-of-court statements possess unique strengths and weaknesses and are distinct evidence from the child's trial testimony." *Id.* (quotation omitted). Defendant's bare allegation that the State offered the grandmother's testimony as to

T.S.'s out-of-court statements solely to duplicate T.S.'s trial testimony is insufficient to demonstrate a right to relief. *See id.* at 450–51. Point denied.

### 2. *Admission of T.S.'s Sister's Testimony*

In his second point on appeal, Defendant claims that the trial court erred in allowing T.S.'s sister's hearsay testimony as to T.S.'s out-of-court statements even though the sister did not participate in a hearing pursuant to section 491.075. Specifically, Defendant alleges that the trial court deprived him of his right to due process and a fair trial by permitting the sister's hearsay testimony without finding that the statements provided sufficient indicia of reliability pursuant to section 491.075. The State counters that: (1) the sister's testimony was cumulative to other evidence presented at trial; (2) T.S. testified and was available for cross-examination; and (3) the sister's testimony was not outcome determinative.

■■■ Defendant concedes that he failed to preserve this issue for appellate review and requests plain error review. Defendant did not object to the testimony of T.S.'s sister concerning T.S.'s out-of-court statements. "Hearsay admitted without objection is not plain error." *State v. Jennings*, 322 S.W.3d 598, 601–02 (Mo.App. S.D.2010). Accordingly, Defendant has failed to demonstrate that the trial court plainly erred in allowing the sister's testimony. *See State v. Perdue*, 317 S.W.3d 645, 653–54 (Mo.App. S.D.2010); *see also State v. Brown*, 912 S.W.2d 643, 645 (Mo. App. W.D.1995) (failure to hold a hearing pursuant to section 491.075 to determine reliability of an out-of-court statement is not plain error). Point denied.

### 3. *Reopened Rule 29.07(b)(4) Inquiry*

In his third point on appeal, Defendant alleges that the trial court erred in not admitting T.S.'s school attendance records at the reopened Rule 29.07(b)(4) examination and not allowing Defendant to file a new motion for new trial. In particular, Defendant argues that the records constituted newly discovered evidence that impacted the trial court's ruling on admission of T.S.'s out-of-court statements pursuant to section 491.075 and "gave grave concern over the confidence in the verdict." In response, the State contends that Defendant is not entitled to a new trial because he offered the records solely to impeach T.S.'s credibility and the evidence was not likely to produce a different result at a new trial.

Rule 29.07(b)(4) provides: "If a defendant has a right to proceed under Rule 24.035 or Rule 29.15, the court at the conclusion of final sentencing shall advise the defendant of such right and shall examine the defendant as to the assistance of counsel received by the defendant." Rule 29.07(b)(4). "Proceedings under Rule 29.07(b)(4) are effectively a 'preliminary hearing,' on ineffective assistance of counsel, for post-conviction relief." *State v. Debler*, 856 S.W.2d 641, 652–53 (Mo. banc 1993). "This proceeding does not replace an evidentiary hearing under Rule 29.15(h) . . . ." *Id.* at 653. "In a Rule 29.07(b)(4) proceeding, the court limits itself to examining the defendant as to specific complaints and determining whether such complaints demonstrate probable cause that counsel was ineffective." *Id.* The trial court's conclusion as to whether probable cause exists determines, among other things, whether the trial court must appoint new counsel to represent the defendant. Rule 29.07(b)(4).

Defendant alleges in his point relied on that the trial court erred in refusing to admit the attendance records at the reopened Rule 29.07(b)(4) inquiry. Howev-

er, in the argument portion of his brief, Defendant simply reasserts his claim that we should remand the case to the trial court for consideration of newly discovered evidence. Defendant fails to cite any authority to support his argument that he was entitled to introduce the records during the Rule 29.07(b)(4) examination. Although Defendant refers to the Rule 29.07(b)(4) inquiry as the "29.15 evidentiary hearing," the record contains no Rule 29.15 motion. The transcript of the reopened Rule 29.07(b)(4) examination reveals that Defendant had not yet filed a motion for postconviction relief. At the end of the hearing, post-trial counsel asked to "reserve the right ... to call [trial counsel] after the post-conviction relief motion ... is properly filed." The trial court responded: "I don't think this hearing today in court closes the possibility of a future hearing on a Rule 29.15 motion.... The hearing you're talking about is ... a whole separate matter."

Defendant also maintains that the trial court erred in not allowing him to file a new motion for new trial. Defendant alleged in his motion to reopen the Rule 29.07(b)(4) inquiry that trial counsel's "feckless efforts" in filing a "completely ineffective" motion for new trial demonstrated ineffective assistance of counsel. Defendant did not request leave to file a new motion for new trial either in writing or orally at the reopened Rule 29.07(b)(4) proceeding. "Trial judges are not expected to assist counsel in trying cases and should act *sua sponte* only in exceptional circumstances." *State v. Cook*, 339 S.W.3d 523, 528 (Mo.App. E.D.2011). "A trial court will not be faulted for failing to take corrective action, when that action is not requested." *Id.* (quotation omitted). We cannot convict the trial court of error in not allowing Defendant to file a new motion for new trial when he never requested that relief. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY P.J., and KURT S. ODENWALD, J., concur.